IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANBY PRODUCTS, INC.** | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | NO. 22-0155 |
| v. | : | |
| | : | |
| **NEW WIDETECH INDUSTRIES CO., LTD.** | : | |
| | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                           OCTOBER 28, 2022

# MEMORANDUM OPINION

**INTRODUCTION**

Before this Court is a motion to dismiss filed by Defendant New Widetech Industries Co., Ltd. ("Defendant" or "NWT"), [ECF 10], which Plaintiff Danby Products Inc. ("Plaintiff" or "Danby") has opposed. [ECF 15]. In its motion, NWT argues that this Court lacks general and specific personal jurisdiction over it because it is not "at home" in Pennsylvania, as required by the seminal United States Supreme Court decision *Daimler AG v. Bauman*, 571 U.S. 117 (2014), and because Danby's claims do not arise out of or relate to any contacts NWT has or had with Pennsylvania.[1] The issues presented in the motion have been fully briefed and are ripe for disposition.[2] After careful consideration, and for the reasons set forth herein, NWT's motion is granted, and this matter is dismissed for lack of personal jurisdiction.

---

[1] NWT also argues that this matter should be dismissed for improper venue, *forum non conveniens*, and international comity. Because this Court has determined that it lacks personal jurisdiction over NWT, this Opinion is limited to the issue of personal jurisdiction.

[2] In adjudicating this motion, this Court has also considered NWT's reply. [ECF 17].

**BACKGROUND**

The salient facts to the issue of personal jurisdiction are the following:[3]

NWT is a manufacturer and seller of consumer appliances throughout the world. NWT is incorporated in and maintains its corporate headquarters in Taiwan. NWT maintains two manufacturing facilities, one in Taiwan and one in China. NWT does not maintain offices anywhere outside of Taiwan and China.

Danby is a distributor of consumer appliances throughout North America, including Pennsylvania. Danby is a Canadian company and maintains a corporate office in Findlay, Ohio. Danby does not appear to maintain any corporate presence in Pennsylvania.

On April 15, 2009, NWT and Danby entered into an "Agreement for Supply of Products" (the "Contract") for NWT to supply Danby with dehumidifiers and air conditioners. Under the Contract, Danby was designated as NWT's exclusive distributor in Canada and a model exclusive distributor in the United States. Danby determined its own distribution channel and customers in the United States and Canada. NWT negotiated and entered into the Contract with Danby while in Taiwan. NWT emailed a signed copy of the Contract from Taiwan to Danby's personnel in Canada.

From 2009 to 2016, NWT manufactured and provided dehumidifiers and air conditioners to Danby in Jiangmen, China and Hong Kong, the two ports closest to NWT's factory in China. After picking up the products in China and Hong Kong, Danby then handled exports and distribution of the products through Danby's own distribution channels and to Danby's own customers. Some of Danby's customers were in Pennsylvania.

Beginning in 2016, Danby began to receive claims from customers that sustained losses as a result of malfunctioning dehumidifiers that had been purchased from NWT. Danby reported these occurrences to the United States Consumer Product Safety Commission (the "CPSC"). By October 2017, NWT was involved in the CPSC's investigation regarding overheating issues and began investigating the issues with its dehumidifiers. The CPSC closed its investigation in February 2018. At that time, NWT informed Danby that NWT was continuing to investigate the overheating issue.

The issues with NWT's dehumidifiers did not cease with the closing of the CPSC's investigation. Unbeknownst to Danby, in January 2021, NWT's counsel conducted a teleconference with the CPSC, during which NWT disclosed that it had continued to study the incident data for the overheating claims and had determined that the incidents did not appear to occur until the dehumidifiers were

---

[3]   Where undisputed, the facts are taken from the parties' pleadings and supporting declarations. Where the facts are disputed, they are construed in Plaintiff's favor.

four or five years old. NWT informed the CPSC that it intended to recall any and all dehumidifiers manufactured between 2009 and 2016.

Over the course of the following months, NWT conferred with the CPSC, at the exclusion of Danby, to institute a recall of nearly 2 million dehumidifiers throughout Canada and the United States. NWT selected and implemented a recall plan that included a formula that would be used to determine consumer reimbursement. Despite repeated requests by Danby for assurances that its costs, expenses, and fees related to the recall would be covered by NWT, NWT ignored and then rejected Danby's requests. Danby alleges it has suffered financial losses as a result of NWT's recall.

Based on these facts, Plaintiff asserts claims against NWT for (1) breach of contract, (2) breach of implied warranty of merchantability, (3) unjust enrichment, (4) tortious interference with existing contracts, and (5) declaratory relief.

**LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2), a defendant may move to dismiss a claim for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Once a defendant has raised a lack of jurisdiction defense, the burden shifts to the plaintiff to present a *prima facie* case establishing jurisdiction over the non-resident defendant in the forum. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); *see also Miller Yacht Sales, Inc., v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) ("[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction."). The plaintiff has the burden to show, "with reasonable particularity," enough contact between the defendant and the forum state to support the exercise of personal jurisdiction by the forum state. *Mellon Bank v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (internal citations omitted); *see also Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 418 (E.D. Pa. 2005) ("In order to establish a *prima facie* case, the plaintiff must present specific facts that would allow the court to exercise jurisdiction over the defendant.").

In determining the existence of personal jurisdiction, courts "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker*, 292 F.3d at 368. Once the plaintiff's "allegations are contradicted by an opposing affidavit . . . [the plaintiff] must present similar evidence in support of personal jurisdiction." *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009). To counter opposing affidavits, "[p]laintiffs may not repose upon their pleadings . . . . Rather, they must counter defendant['s] affidavits with contrary evidence in support of purposeful availment jurisdiction." *Id.* at 559. To that end, the "plaintiff must respond to the defendant's motion with 'actual proofs;' 'affidavits which parrot and do no more than restate [the] plaintiff's allegations . . . do not end the inquiry.'" *Lionti v. Dipna, Inc.*, 2017 WL 2779576, at *1 (E.D. Pa. June 27, 2017) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)).

**DISCUSSION**

NWT moves to dismiss this action based on a lack of sufficient minimum contacts with Pennsylvania to support personal jurisdiction in this forum. NWT has offered the sworn declaration of its Senior Manager, Jane Shyi, in which Ms. Shyi attests that, *inter alia*, NWT neither is incorporated in nor maintains a principal place of business in Pennsylvania. Danby has not contested these jurisdictional facts[4] but has instead relied primarily on a "stream-of-commerce" theory to argue that NWT's knowing placement of its products in Pennsylvania is sufficient to sustain personal jurisdiction over NWT. Danby's argument is misplaced.

A federal court may assert jurisdiction over a nonresident of the forum state to the extent authorized by the law of the forum—here, Pennsylvania. *Remick v. Manfredy*, 238 F.3d 248, 255

---

[4] The allegations in Danby's own complaint confirm that NWT maintains its "headquarters" in Taiwan. (*See* Compl., ECF 1, at ¶ 49).

(3d Cir. 2001). Pennsylvania's long-arm statute grants jurisdiction coextensive with that permitted by the due process clause of the Fourteenth Amendment to the United States Constitution. *Id.*; *see also* 42 Pa. Cons. Stat. § 5322(b). Therefore, this Court's analysis must focus on federal due process requirements. *Applied Tech. Int'l, Ltd. v. Goldstein*, 2004 WL 2360388, at *2 (E.D. Pa. Oct. 20, 2004). A court's constitutional inquiry is guided by the "minimum contacts" test established in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). Under this standard, a plaintiff must show that a nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (internal quotations and citation omitted); *see also Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). The focus of the minimum contacts analysis is "the relationship among the defendant, the forum, and the litigation," *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977), such that the defendant has fair warning that it may be subject to suit in that forum, *Marten*, 499 F.3d at 296.

A federal court must have one of two forms of personal jurisdiction to comport with these principles: general jurisdiction or specific jurisdiction. *See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414–15 (1984)). Here, Danby contends this Court can exercise either general or specific jurisdiction over its claims.

### *General Jurisdiction*

General jurisdiction allows a court to exercise its jurisdiction over any party that possesses "continuous and systematic" contacts with the forum state, regardless of whether the claim arises out of the party's forum-related activities. *Helicopteros*, 466 U.S. at 415 n.9; *Marten*, 499 F.3d at 296. Where the cause of action has no relation to a corporate defendant's contacts with the forum,

general jurisdiction may only be asserted over the corporate defendant if the corporate defendant's "affiliations with the [s]tate are so 'continuous and systematic' as to render them essentially at home in the forum [s]tate." *Daimler*, 571 U.S. at 128 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011)) (quotation marks omitted); *see also Helicopteros*, 466 U.S. at 414.

"The 'paradigm' forums in which a corporate defendant is 'at home,' . . . are the corporation's place of incorporation and its principal place of business . . . ." *BNSF Ry. Co. v. Tyrrell*, — U.S. —, 137 S. Ct. 1549, 1552 (2017) (citing *Daimler*, 571 U.S. at 137); *see also Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016). In addition to the two paradigm bases, general jurisdiction may also arise in the "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business [are] so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19. Applying the *Daimler* analysis, the United States Court of Appeals for the Third Circuit (the "Third Circuit") has held that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Chavez*, 836 F.3d at 223 (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)); *see also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) ("[I]n our view *Daimler* established that, except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business— the 'paradigm' cases.") (citation omitted).

NWT contends that it has insufficient minimum contacts with Pennsylvania to support personal jurisdiction in this forum. It is undisputed that NWT neither is incorporated nor maintains a principal place of business in Pennsylvania. As such, Pennsylvania is not a "paradigm" forum

where NWT is "at home" for the purposes of personal jurisdiction. *Daimler*, 571 U.S. at 122. Nevertheless, Danby argues that this Court can exercise general jurisdiction over NWT because: (1) NWT "touts its global reach and United States Market influence," (2) NWT has applied for and received trademarks and patents in the United States; (3) NWT has saturated the United States market, including Pennsylvania; (4) NWT has been involved in litigation in Pennsylvania; and (5) NWT has sold products directly to an unrelated Pennsylvania company. (Pl.'s Resp. in Opp., ECF 15, at p. 16). Danby further contends that these purported contacts constitute the requisite "continuous and systematic" contacts with Pennsylvania for the exercise of general jurisdiction. Danby, however, is mistaken.

Notably, in support of its argument, Danby ignores the *Daimler* progeny that narrowed general jurisdiction over corporate entities to the forum in which the entity is "at home." Regardless, in the post-*Daimler* legal landscape, the mere fact that an out-of-state entity transacts business in Pennsylvania, even *substantial* business, is insufficient to establish that the entity is "at home" in Pennsylvania. *See Daimler*, 571 U.S. at 138 (emphasizing that even "engage[ment] in a substantial, continuous, and systematic course of business" alone is insufficient to render an entity at home in a forum); *see also, e.g.*, *Spear v. Marriott Hotel Servs., Inc.*, 2016 WL 194071, at *3 (E.D. Pa. Jan. 15, 2016) ("Applying the considerations of *Daimler* and *Goodyear*, the mere allegation that defendants operate in the State does not render defendants 'at home' in Pennsylvania and subject it to general jurisdiction here."); *Campbell v. Fast Retailing USA, Inc.*, 2015 WL 9302847, at *2–3 (E.D. Pa. Dec. 22, 2015) (citing *Daimler* and holding that "[t]he allegation that an entity transacts business, even substantial business, in Pennsylvania is insufficient to establish that it is essentially 'at home' in Pennsylvania"); *Farber v. Tennant Truck Lines, Inc.*, 84 F. Supp. 3d 421, 432 (E.D. Pa. 2015) ("A corporation is *not* 'at home' in every state

7

in which it engages in a substantial, continuous, and systematic course of business.'"). Indeed, the Supreme Court has held that regularly occurring sales to a forum state cannot subject a nonresident defendant to general jurisdiction. *See Goodyear*, 564 U.S. at 921, 927-928. Specifically, in *Goodyear*, the Supreme Court concluded that even "tens of thousands" of a foreign manufacturer's tires entering the forum over a three-year period was insufficient to trigger general jurisdiction because, despite those sales, the foreign corporation was not regarded as "at home" in that state. *Id.* In *Daimler*, the Supreme Court held that even though ten percent of a nonresident defendant's sales occurred within the forum state, such sales did not render Daimler "at home" in the forum. *Daimler*, 571 U.S. at 139.

Under these binding precedents, this Court finds that Danby's allegations of NWT's purported global reach in the United States fail to show that NWT is "essentially at home" in Pennsylvania, as required under *Goodyear* and *Daimler*. *See Daimler*, 571 U.S. at 122 (explaining that regional offices are not enough to consider a corporation "at home" in a forum in which it does not have its principal place of business or its place of incorporation); *see also Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir. 2014) (noting that *Daimler* makes "clear that even a company's engage[ment] in a substantial, continuous, and systematic course of business is alone insufficient to render it at home in a forum") (internal citation and quotations omitted); *Krishanti v. Rajaratnam*, 2014 WL 1669873, at *7 (D.N.J. Apr. 28, 2014) ("It is clear from *Daimler* that the physical presence of a corporation in a state does not necessarily render the corporation 'at home' in that state."). Nor does NWT's participation in Pennsylvania litigation give rise to general jurisdiction. *See Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In Amministrazione Straordinaria*, 937 F.2d 44, 50 n.5 (2d Cir. 1991) ("A party's consent to jurisdiction in one case, however, extends to that case alone."); *Beaton v.*

8

*LG Chem, Ltd.*, 2021 WL 3828835, at *5 (D.N.J. Aug. 26, 2021) (citing *Klinghoffer*); *Olympia Steel Bldg. Sys. Corp. v. Gen. Steel Domestic Sales, LLC*, 2007 WL 1217992, at *4 (W.D. Pa. Apr. 24, 2007) (holding "participation in prior lawsuits an insufficient basis for the conclusion that it has consented to the exercise of general jurisdiction in this case."). Because Danby has failed to make a showing that NWT's contacts with Pennsylvania "are so continuous and systematic as to render it essentially at home in this state," *Daimler*, 571 U.S. at 139 (internal quotations and citation omitted), this Court finds that it lacks general jurisdiction over NWT.

### *Specific Jurisdiction*

Danby also argues that this Court should exercise specific jurisdiction over NWT. NWT argues that Danby has failed to meet its burden because there is no evidence of any connection between Pennsylvania and NWT beyond the stream of commerce and the independent actions of Danby and other unrelated companies. This Court agrees with NWT.

Specific jurisdiction allows the court to hear claims that arise from or relate to the party's contacts with the forum state, such that the defendant should reasonably anticipate being hailed into court in that forum. *Helicopteros*, 466 U.S. at 414 n.8; *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006). In determining whether there is specific jurisdiction over a nonresident defendant, courts undertake a three-part inquiry. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). "First, the defendant must have 'purposefully directed his activities' at the forum." *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Second, the plaintiff's claim must "arise out of or relate to" at least one of those purposefully directed activities. *Helicopteros*, 466 U.S. at 414. Third, if the first two requirements are met, courts consider additional factors to ensure that the assertion of jurisdiction otherwise "comport[s]

9

with fair play and substantial justice." *Burger King*, 471 U.S. at 476 (internal citations omitted); *see also O'Connor*, 496 F.3d at 317.

To satisfy the first element for specific jurisdiction, Danby must show that NWT took "some act by which [it] purposefully avail[ed] itself of the privilege of conducting activities within the forum state." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, — U.S. —, 141 S. Ct. 1017, 1024–25 (2021) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). While physical entry into the forum is not required, Danby must show that NWT "deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id.* at 1025 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). In determining whether a court has specific jurisdiction over contract claims, such as the majority of Danby's claims here, the court considers "the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick*, 238 F.3d at 256 (citations omitted). While a defendant having a contract with a resident of the forum state is relevant to the jurisdictional analysis, "[t]he mere existence of a contract is insufficient to establish minimum contacts." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 261 (3d Cir. 2008) (citing *Burger King*, 471 U.S. at 478); *see also Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 333 n.7 (3d Cir. 2009) ("[A] contract, 'without more, is insufficient to establish minimum contacts,' as are 'informational communications' in furtherance of a contract.") (citations omitted); *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993) ("It is well established, however, that a nonresident's contracting with a forum resident, without more, is insufficient to establish the requisite 'minimum contacts' required for an exercise of personal jurisdiction over the nonresident.") (citations omitted).

10

NWT argues that it does not have the requisite contacts with Pennsylvania to establish specific jurisdiction over Danby's contract-based claims.  In support of its argument, NWT contends—and Danby does not refute—that the contract underlying the parties' relationship and Danby's contract-based claims has no connection to Pennsylvania.  When negotiating the contract, NWT communicated only with Danby personnel located in Canada.  Some of the in-person negotiations took place in China.  None appear to have occurred in Pennsylvania.  Most of the communications occurred over email, between the parties' respective personnel in Canada and Taiwan.  NWT's president signed the contract while in Taiwan and emailed a signed copy to Danby in Canada.  In performance of the contract, NWT manufactured the dehumidifiers in China and provided them to Danby for pickup in China and Hong Kong.  In sum, the facts surrounding NWT's contractual relationship with Danby have no connection to Pennsylvania.

Though not refuting any of NWT's jurisdictional facts surrounding the parties' contract, Danby contends that "NWT directed and intended its products to reach Pennsylvania . . . [and] was fully aware that a sizeable number of products manufactured by NWT were being sold and distributed within Pennsylvania." (Pl.'s Resp. in Opp., ECF 15, at p. 21).  This "stream-of-commerce" theory has been repeatedly rejected by the United States Supreme Court and the Third Circuit:

> A plurality of Supreme Court Justices has twice rejected the stream-of-commerce theory, *see J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877–85 (2011) (plurality opinion); *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 108–13 (1987) (plurality opinion), stating, in a manner consistent with our own case law, that plaintiffs must instead rely on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Asahi*, 480 U.S. at 109; *see D'Jamoos*, 566 F.3d at 102–03.  Indeed, the Supreme Court has recently held that "[t]he bare fact that [a non-resident defendant] contracted with a [resident] distributor is not enough to establish personal jurisdiction in the

11

> State." *Bristol-Myers Squibb Co. v. Superior Court*, — U.S. —, 137 S. Ct. 1773, 1783 (2017). We thus have no cause to revisit our Court's precedent on this issue, and we decline to adopt the Shukers' stream-of-commerce theory of specific personal jurisdiction. *See D'Jamoos*, 566 F.3d at 102–06.

*Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018). Having been repeatedly rejected by both the Supreme Court and the Third Circuit, Danby's stream-of-commerce theory to invoke specific jurisdiction is without merit.

Danby also points to a purported contractual/business relationship between NWT and a Pennsylvania company, Almo Corporation ("Almo"), to show that NWT deliberately targeted the Pennsylvania market. While the amount, frequency, and duration of business between NWT and Almo is disputed, it is undisputed that, as with NWT's relationship with Danby, Almo accepted delivery of NWT's product in China and then Almo alone determined where the product was to be sold, distributed, and/or delivered. NWT did not ship products to Pennsylvania. Thus, NWT's purported relationship with a third party in Pennsylvania is insufficient to show the requisite "purposeful availment." *See Walden v. Fiore*, 571 U.S. 277, 286 (2014). ("[A] defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction."); *Bristol-Myers Squibb Co. v. Superior Ct. of Calif.*, — U.S. — , 137 S. Ct. 1773, 1783 (2017) (holding that the "bare fact that [defendant] contracted with a California distributor is not enough to establish personal jurisdiction in the State."). In any event, and as discussed more fully below, Danby's claims do not arise out of NWT's purported contacts with Pennsylvania, even those purported contacts involving Almo.

NWT also argues that Danby has failed to meet its burden as to the second prong, *i.e.*, showing that Danby's claims "arise out of or relate to" NWT's purposeful contacts with Pennsylvania. *Bristol-Myers Squibb*, 137 S. Ct. at 1780. This Court agrees.

For this Court to exercise specific jurisdiction over Danby's claims, there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Goodyear*, 564 U.S. at 919.  The United States Supreme Court has made clear that where there is no connection between a plaintiff's claims and the defendant's conduct in or aimed at the forum, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb*, 137 S. Ct. at 1781.  "[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales." *Goodyear*, 564 U.S. at 931 n.6.

Each of Danby's claims is premised upon the alleged damages it suffered on account of NWT's recall of products that Danby sold and/or delivered to customers, including customers in Pennsylvania.  Specifically, Danby contends that it incurred damages in Pennsylvania because some of the recalled NWT dehumidifiers were returned to sellers in Pennsylvania.  To the extent these damages arise out of or relate to contacts with Pennsylvania, however, they arise out of and/or relate to ***Danby's contacts with Pennsylvania, not NWT's contacts with Pennsylvania***.  As described above, and not refuted by Danby, NWT did not sell products directly to any entity or person in Pennsylvania.  Rather, NWT sold products to distributors like Danby (a Canadian entity), which then sold the products to customers throughout the United States, including Pennsylvania.  As such, Danby's alleged damages arise out of or relate to its *own* contacts with Pennsylvania, not NWT's contacts with Pennsylvania.  Accordingly, these facts do not confer specific jurisdiction in this forum because "[t]he contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford*, 141 S. Ct. at 1025 (citation omitted).[5]

---

[5]   To the extent Danby intended to rely on NWT's purported contacts with Almo to support specific jurisdiction, such reliance is equally misplaced.  Danby must show that its claims arise out of or relate to NWT's contacts with Pennsylvania.  None of Danby's claims arises out of NWT's relationship with or supply of product to Almo.

13

Danby also attempts to satisfy the second prong by pointing to NWT's various communications with the CPSC regarding NTW's planned recall and NWT's exclusion of Danby from those communications as being sufficiently related to Danby's claims and damages to support specific jurisdiction. To the extent Danby's claims arise out of or relate to these purported contacts, Danby does not allege how that these contacts amount to NWT's contacts ***with Pennsylvania***. Similarly, Danby points to purported communications between NWT's counsel in California and Danby's counsel in Pennsylvania as sufficient to meet the required nexus for specific jurisdiction. To the extent this Court could even consider these to be NWT's contacts with Pennsylvania, Danby has failed to articulate, let alone show, how Danby's claims (mostly contract-based claims) arise out of or relate to these communications between the parties' counsel. Only when communications themselves form the basis of a plaintiff's claim will they be found to rise to the level of minimum contacts. *See Sunbelt*, 5 F.3d at 33 (finding appellee's telephone calls from Pennsylvania to Texas did not establish jurisdiction in Texas when the calls themselves were not the basis of the cause of action). That is not the case here. Danby's claims arise out of purported breaches of representations and obligations made in the parties' agreements. As such, NWT's purported communications with another party (the CPSC) and communications between the parties' respective counsel are insufficient to give this Court specific jurisdiction over Danby's claims.

In sum, Danby has failed to show how any of its claims arise out of or relate to NWT's contacts with Pennsylvania. As such, Danby has also failed to satisfy the second prong for specific jurisdiction.[6]

---

[6] In its response, Danby requests leave to conduct discovery targeted to the issue of personal jurisdiction. No amount of discovery, however, could change the undisputed facts that NWT neither is incorporated nor maintains a principal place of business in Pennsylvania. Nor will any discovery change the undisputed fact that Danby's claims do not arise out of any of NWT's purported contacts with Pennsylvania. As such, Danby's request for discovery on this issue is denied.

**CONCLUSION**

For the reasons set forth herein, NWT's motion to dismiss is granted. An appropriate Order will follow this Memorandum Opinion.

*NITZA I. QUIÑONES ALEJANDRO*, J.